## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **CHAYLA LESLEY MADSEN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-22-CV-00276-DCG** |
| | § | |
| **THE UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |

### DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS

Defendant, United States of America, moves to dismiss Plaintiff, Chayla Lesley Madsen's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff brings this suit pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, (FTCA). In 2017, Plaintiff went to live with her biological father, former Army Staff Sergeant Randall Hughes (Hughes), at Fort Bliss Texas. ECF No. 1, ¶ 11. In 2018, Hughes transferred to Fort Dix, New Jersey. *Id.*, ¶ 19. In March 2020, while living with Hughes in Fort Dix, he sexually assaulted her. *Id.*, ¶ 21. According to Plaintiff, the United States is liable for her damages arising from the sexual assault because the Army allegedly failed to prosecute Hughes for an earlier sexual assault on an unrelated adult,[1] and failed to warn her and/or her mother of the assault allegations against Hughes before approving his request for on-base housing for Plaintiff at Fort Bliss. *Id.*, ¶¶ 28-30.

Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity with respect to any of Plaintiff's claims.

---

[1] In February 2017, Mrs. L.R., the spouse of an enlisted soldier under Hughes's supervision, accused Hughes of sexually assaulting her at a Super Bowl party. The Army investigated Mrs. L.R.'s claims. After a thorough review of the evidence, the Army declined to criminally prosecute Hughes at that time.

First, the FTCA precludes liability for certain intentional torts, such as assault, battery, and misrepresentation. Second, the FTCA's discretionary function exception bars Plaintiff's claims because the United States has not waived its sovereign immunity for government employees' discretionary decisions, such as those regarding prosecutions. Third, the conduct Plaintiff challenges has no private person analogue. Fourth, the FTCA does not create a cause of action for violations of federal statutes or regulations. The Court need not find in favor of the United States on all these grounds; dismissal is appropriate if the Court finds even one exemption applies. For those reasons, this Court lacks subject matter jurisdiction and dismissal is appropriate under Rule 12(b)(1).

## I.     ARGUMENT AND AUTHORITIES

### A.     Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction.

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). A federal court properly dismisses a case, or a cause of action, for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(1) motion to dismiss must be considered before any other challenges because a court must have subject matter jurisdiction before determining a claim's validity. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact that may be in dispute." *Rittgers v. United States,* 131 F. Supp. 3d 644, 648 (S.D. Tex. 2015). The court's consideration of matters outside the pleadings does not convert the motion to

one for summary judgment. *Pruitt v. Dep't of the Army*, H-09-2534, 2011 WL 1157340, at *2 (S.D. Tex. Mar. 24, 2011).

Whether a particular claim falls within the FTCA's limited waiver of sovereign immunity goes to the court's subject-matter jurisdiction and may therefore be resolved on a Rule 12(b)(1) motion to dismiss. *See, e.g.*, *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286-87 (5th Cir. 2012).

**B.**     **The Court Lacks Subject Matter Jurisdiction Because Plaintiff's Claims Are Not Cognizable Under The FTCA.**

As sovereign, the United States is immune from suit unless it waives that immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Wright ex rel. Wright v. United States*, 639 F. App'x 219, 222 (5th Cir. 2016). The FTCA explicitly provides the contours for when the United States waives immunity from tort suits, subject to certain exceptions. *See* 28 U.S.C. §§ 2674, 2680. The FTCA waives immunity for injuries:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[2]

*Id.*, § 1346(b)(1). The Fifth Circuit has expressly stated that "the limited waiver of sovereign immunity contained in the FTCA should be narrowly-construed in favor of the United States." *Wright*, 639 F. App'x at 222 (quoting *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999)). The burden to show Congress's unequivocal waiver of sovereign immunity must constantly be borne by the party seeking to sue the government. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

---

[2] The FTCA "requires application of the whole law of the State where the act or omission occurred[,]" including that State's choice-of-law rules. *Richards v. United States*, 369 U.S. 1, 11 (1962).

U.S. 375, 377 (1994); *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009); *Ramming*, 281 F.3d at 161.

As stated above, there are several exceptions to the waiver of immunity from tort suits that apply to Plaintiff's allegations, and therefore, preclude her claims against the United States.

### 1.   The United States Has Not Waived Sovereign Immunity For Certain Intentional Torts.

The FTCA carves out an exception to the waiver of immunity for certain intentional torts. Under the FTCA there is no subject matter jurisdiction for claims, "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights …". 28 U.S.C. § 2680(h). Thus, the FTCA's intentional tort exception forecloses claims against the federal government and its employees for the specific tortious conduct enumerated above.

Whether a defendant's conduct is excepted from the FTCA is a question of federal common law. *United States v. Neustadt,* 366 U.S. 696, 705-06 (1961). Federal courts focus on the conduct upon which the plaintiff's claim is based to determine whether the claim arises out of any of these enumerated torts. *Truman v. United States,* 26 F.3d 592, 594 (5th Cir. 1994). Courts then determine if the plaintiff's claim can "fairly be read to arise out of conduct that would establish an excepted cause of action." *See Doe v. United States,* 83 F. Supp. 2d 833, 838 (S.D. Tex. 2000) (quoting *McNeily v. United States,* 6 F.3d 343, 347 (5th Cir. 1993)). To the extent Plaintiff brings claims for negligent supervision, negligent undertaking, negligent misrepresentation, and any other negligence claims arising out of the alleged sexual assault, those claims are barred because they arise directly from the types of conduct excepted under 28 U.S.C. § 2680(h).

### a.   The FTCA Precludes Claims "Arising out of Assault"

Plaintiff's claims arising from the sexual assault fall squarely within the excepted

intentional torts enumerated in § 2680(h), which explicitly excludes from that statute's waiver of sovereign immunity "any claim arising out of assault [or] battery [³] …". Plaintiff does not bring claims for assault and battery. Instead, Plaintiff attempts to couch her claims as a cause of action for negligence against the United States for undertaking a duty to protect against domestic battery, sexual assault, and/or child abuse from an abusing servicemember, and then failing to follow its own regulations to protect victims. ECF No. 1, ¶ 7. However, the Supreme Court has held that 28 U.S.C. § 2680(h) bars not only claims for assault and battery, but also claims for negligence of government employees in facilitating or not preventing the assault or battery. *United States v. Shearer,* 473 U.S. 52, 55 (1985). Even if a plaintiff styles a claim so that it is not one of those enumerated in § 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Truman,* 26 F.3d at 594 (citations omitted).

The Fifth Circuit's seminal case on this issue, *Leleux,* reiterated the principle that bars plaintiffs from creatively transforming a non-cognizable assault and battery claim into a negligence claim: "[A] plaintiff cannot avoid the reach of § 2680(h) by framing his complaint in terms of negligent failure to prevent the excepted harm." *Leleux,* 178 F.3d at 756; *Bodin v. United States,* A-02-CV-567, 2005 WL 8157353, at *2 (W.D. Tex. April 28, 2005) citing *McNeily,* 6 F.3d

---

³ Although state law is used to determine liability for a cause of action under the FTCA, substantive federal law is used to determine whether a claim made under the FTCA is excepted under 28 U.S.C. § 2680(h). *Leleux,* 178 F.3d at 755 n.2 (citing *Neustadt,* 366 U.S. at 705–06). The Fifth Circuit has turned to the Restatement of Torts definition of excepted torts to determine whether claims under the FTCA are barred by § 2680(h). *Id.* at 755–56. The Restatement (Second) of Torts (1965) defines battery as an intentional harmful or offensive contact with another person. *Id.,* §§ 13, 18. Assault is defined as an act intended to cause a harmful or offensive contact with another person that puts the other person in imminent apprehension of that contact. *Id.* at § 21. *See also Griego v. United States,* EP-99-CA-164-DB, 2000 WL 33348763, *1 n.1 (W.D. Tex. June 2, 2000). Hughes's alleged "domestic battery, sexual assault and/or child abuse," as described in Plaintiff's complaint meets both of these definitions. ECF No. 1, ¶ 7.

at 347.

A close comparison of the facts of the *Leleux* case reveals that this case must be dismissed for the same reasons. Catherine Leleux alleged negligence against the United States for its failure to protect her from a sexual battery by her Navy boss, Petty Officer Paul M. Sistrunk.[4] *Leleux*, 178 F.3d at 753–54. The Fifth Circuit affirmed the district court's dismissal of the case:

> [Leleux's] claims of negligence are exempted under § 2680(h) because they stem from a battery.
> … Leleux's claims that the Navy allegedly failed to prevent her injury are not sufficiently distinct from the battery perpetrated by Sistrunk; the claims thus "arose out of" the battery. … In *Shearer*, [473 U.S. at 52], a plurality of Justices held that ***§ 2680(h) bars not only claims for assault or battery but also claims for negligence of government employees in facilitating or not preventing the assault or battery.*** The Court held that the FTCA bars "claims … that sound in negligence but stem from a battery committed by a Government employee." ***The Fifth Circuit adopted a broad reading of the* Shearer *plurality in specific terms, and that holding remains the law of the circuit.***

*Id.* at 756 (emphasis added) (internal citations and quotations omitted).

Plaintiff's claim mirrors Leleux's claim: where Leleux claimed the United States failed to protect her from a sexual battery (*id.* at 753–54), Plaintiff claims the United States failed to protect her from Hughes's domestic battery, sexual assault, and child abuse. *See generally* ECF No. 1. Therefore, just like Leleux's negligence claim, Plaintiff's negligence claims have at their core the tortious behavior excluded from the FTCA's waiver of sovereign immunity—i.e., assault and battery. *See* 28 U.S.C. § 2680(h); *Leleux*, 178 F.3d at 756. Just as the Fifth Circuit held in *Leleux*, the alleged failure by the United States to prevent assault and battery is not sufficiently distinct from the underlying assault and battery. *See Leleux*, 178 F.3d at 756. The Court should dismiss Plaintiff's claims in their entirety because they are based on a claim for which the FTCA does not

---

[4] Notably, Plaintiff Leleux engaged in *consensual* intercourse with her superior. Therefore, the battery arose as a matter of law based on her contracting an STD, not because of the sexual act itself.

waive sovereign immunity—the initial assault and battery that led directly to the alleged negligence of the United States in failing to prevent Hughes's alleged assault and battery.

The Court should also dismiss Plaintiff's claims because they arose from and are related only to the employment relationship between Hughes and the United States. Section 2680(h) excludes negligent conduct from the FTCA's waiver of sovereign immunity when the alleged action is related to the employment relationship between the tortfeasor and the United States. *See Sheridan v. United States,* 487 U.S. 392, 406-08 (1988) (Kennedy J., concurring in the judgment) (opining that negligent supervision claims in assault or battery cases, as with all other claims concerning the government's employment relationship with the tortfeasor, should always be barred).[5] The *Leleux* court put a fine point on it: "Leleux does not allege that the Government had any duty to protect her independent of its employment relationship with Sistrunk; Leleux references no regulation or duty assumed by the Navy that concerns the Navy's responsibility for the welfare of third parties." *Leleux,* 178 F.3d at 758.

This point cannot be understated. Plaintiff makes clear that the duty alleged against the United States is based only on its employment relationship with Hughes as a servicemember. Her first alleged fact under the "Statement of Facts" section is that at all times relevant to this case, he "was a soldier stationed at Fort Bliss, Texas." ECF No. 1, ¶ 8. Plaintiff fails to show any alleged negligence arising out of an independent, antecedent duty unrelated to the employment relationship between Hughes and the United States. For these reasons, the entirety of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.

---

[5] "The *Sheridan* Court was explicit that any tortious conduct committed *outside the scope of employment* is barred by the FTCA. Only negligent conduct, undertaken within the scope of employment *and* unrelated to an excluded tort under § 2680(h), may form the basis of a cause of action." *Id.* (*emphasis* added) (citation omitted).

###### b. *The FTCA Precludes Claims "Arising out of Misrepresentation"*

Plaintiff's complaint specifically alleges "[t]he Army owed a duty to inform Lesley and/or her mother of the credible allegations against Hughes made by [Mrs. L.R.], before it approved Lesley's moving into on-base housing at Fort Bliss. The Army breached those duties by failing to inform Lesley and/or her mother of the allegations against [Mrs. L.R.]." *Id.*, ¶ 30. First, Plaintiff cannot establish a duty to warn under these circumstances under Texas law. Next, even if she could, because Plaintiff makes the alleged failure to communicate information a necessary link in the causal chain that led to her injury, this claim also falls within the excepted enumerated intentional torts set forth in § 2680(h). Therefore, because sovereign immunity is not waived in this instance, the Court lacks subject matter jurisdiction and dismissal is appropriate under Rule 12(b)(1).

The FTCA's misrepresentation exception, which also precludes imposing liability on the United States for any claim for harm arising out of the failure to communicate information, independently bars all of Plaintiff's claims; including but not limited to any claims the Plaintiff asserts based on a negligent undertaking theory. This exception encompasses negligent as well as deliberate misrepresentations. *Neustadt*, 366 U.S. 696, at 702, 704; *Life Partners Inc. v. United States*, 650 F.3d 1026, 1031 (5th Cir. 2011); *McNeily*, 6 F.3d at 347. Both affirmative misstatements and omissions of material fact are equally protected. *McNeily*, 6 F.3d at 347 (citing *Paul v. United States*, 929 F.2d 1202 (7th Cir. 1991)); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (La. Plaintiffs)* ("*FEMA Trailer II*"), 713 F.3d 807, 811-12 (5th Cir. 2013) (per curiam).

The exception is broad and covers any claim arising out of the "communication of (or failure to communicate) information." *Life Partners Inc.*, 650 F.3d at 1032; *see also Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) ("The misrepresentation exception shields

government employees from tort liability for failure to communicate information, whether negligent, or intentional."); *Zelaya v. United States*, 781 F.3d 1315, 1334-35 (11th Cir. 2015) ("[M]iscommunication and non-communication yield the same result for purposes of the misrepresentation exception, because the misrepresentation exception 'encompasses failure to communicate as well as miscommunication.'") (quoting *JBP Acquisitions, LP v. U.S. ex rel.*, 224 F.3d 1260, 1265 n.3 (11th Cir. 2015)).

When applicable, moreover, the misrepresentation exception bars claims not only for financial injury, but also bodily harm. *See, e.g., Lawrence*, 340 F.3d at 958 (misrepresentation exception barred plaintiff's claim that she was sexually assaulted by participant in witness protection program as result of Federal law enforcement officers' failure to provide Idaho Department of Health and Welfare full, complete, and accurate information concerning participant's criminal history during hearing); *FEMA Trailer II*, 713 F.3d at 809-10 (misrepresentation exception barred plaintiffs' claims for exposure to formaldehyde based on FEMA's alleged material omissions of fact concerning exposure risk to evacuees temporarily housed in trailers after Hurricanes Katrina and Rita).

Finally, the misrepresentation exception cannot be circumvented by asserting that the federal government assumed a duty by undertaking to provide the information at issue. For example, in *Baroni v. United States*, 662 F.2d 287 (5th Cir. 1981) (per curiam), the plaintiff homeowners argued that the misrepresentation exception did not bar their claims for flood damage because the Federal Housing Administration had undertaken to determine whether their homes were located above the 50-year flood elevation. The Fifth Circuit rejected this attempt to evade the exception's protection. "Assuming that the government's undertaking created a duty under state law to determine the flood level non-negligently, the damages complained of by the plaintiffs still

result solely from the fact that the government communicated its miscalculation to the developer who relied on it, and that reliance eventually caused the plaintiffs' damage." *Id.* at 289.

In determining whether a claim is properly characterized as one for misrepresentation, courts assess "whether 'the chain of causation' from the alleged negligence to the injury depends upon a misrepresentation by a government agent." *FEMA Trailer II*, 713 F.3d at 811 (quoting *Life Partners Inc.*, 650 F.3d at 1032 (quoting *Com. Union Ins. Co. v. United States*, 928 F.2d 176, 179 (5th Cir. 1991))). Such a determination centers on whether "the claim is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance." *Life Partners Inc.*, 650 F.3d at 1032 (quoting *Metro. Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000)). Second, if the claim does depend on a misrepresentation, courts ask "whether Congress has nonetheless waived sovereign immunity independently of the FTCA." *Life Partners Inc.*, 650 F.3d at 1032 (quoting *Commercial Union Ins. Co.*, 928 F.2d at 179). *Holcombe v. United States*, 388 F. Supp. 3d 777, 790 (W.D. Tex. 2019). Here, the only waiver of immunity cited by Plaintiff is the FTCA, so the Court's inquiry is limited to the first step.

In *Life Partners Inc.*, a company purchased an existing life insurance policy owned by an employee of the Small Business Administration (SBA). Prior to purchasing the policy, the company contacted the SBA to confirm that the policy had not been assigned to any other party. Without reviewing its own records, the SBA assured the company that the policy had not been assigned. In fact, a simple review of the record would have revealed that the policy had been previously assigned. Based on the government's failure to communicate that critical information, the company agreed to buy the policy and suffered financial loss as a result and sued the United States under the FTCA.

The Fifth Circuit held the action was barred by the misrepresentation exception. To avoid the exception, the company attempted to characterize its claims as one of mere negligence and clerical error—specifically, by asserting that "it stemmed from the SBA's negligence in failing to keep appropriate records of the prior assignment." *Life Partners, Inc.*, 650 F.3d at 1029. The Court disagreed: "even assuming the SBA had performed a task negligently, Life Partners has not established that any such negligence caused its injury. Simply put, Life Partners would have suffered no injury absent the misrepresentation, because it otherwise would not have purchased the policy." *Id*. at 1033. In other words, the communication was not merely collateral to the alleged negligence; instead, it was an essential link in the casual chain.

A similar analysis underpinned *Com. Union Ins. Co.*, 928 F.2d at 176. In that case shipyard workers allegedly had contracted silicosis because of exposure to silica dust while sandblasting. Their employer provided the workers with Supplied-Air Respirators. The model of respirator had previously been tested by the Bureau of Mines of the U.S. Department of Interior, pursuant to federal regulation. The Bureau published the results of its findings, which approved usage of the respirator. The company claimed that it purchased those respirators based on the published approval by the Bureau. The company's insurers eventually sued the United States under the FTCA, claiming that "the bureau's failure to discover the risk was negligent, and proximately caused the injuries of the silicosis claimants." *Id*. at 178. The Fifth Circuit affirmed the dismissal of the action. In so doing, the Court emphasized that the transmission of misinformation was "a necessary link in the causal chain from the negligence on the part of the bureau that the insurers allege to the injuries they claim to have suffered as a result of [the employer's] use of defective supplied-air respirators." *Id*. at 179.

Because Plaintiff makes the alleged failure to communicate information a necessary link in the causal chain that led to her injury, this claim also falls squarely within the excepted enumerated intentional torts set forth in § 2680(h). Under Texas law, there is no duty to warn a third party under these circumstances. Furthermore, disclosing information about a pending sexual assault allegation to third parties could be prohibited by The Privacy Act. *See* 5 U.S.C § 552a(b), 552a(a)(4), 552a(i)(1).[6]

Therefore, because sovereign immunity is not waived in this instance, the Court lacks subject matter jurisdiction and dismissal is appropriate under Rule 12(b)(1).

## 2.      Plaintiff's Claims Are Barred By The FTCA's Discretionary Function Exception.

### a.      Legal standard for the discretionary function exception.

The FTCA's "discretionary function exception" (DFE) bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has applied a two-part test to determine when the DFE applies. *Gaubert*, 499 U.S. at 328–32. Courts first ask whether the challenged conduct was in fact "discretionary in nature"—that is, whether the conduct involved "'an element of judgment or

---

[6] *See also Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 863 (D.C. Cir. 1981) (stating that prosecutorial decisions are "rarely" subject to public scrutiny); *Rimmer v. Holder,* 700 F.3d 246, 257 (6th Cir. 2012) ("This privacy interest exists not only for those who are suspects in an investigation, but also for third parties mentioned in the documents, such as witnesses, informants, and investigators."); and *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press,* 489 U.S. 749, 780 (1989) (holding that individuals maintain a privacy interest in their criminal investigation history even if they are convicted).

choice.'" *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536). This prong is met unless "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Gaubert,* 499 U.S. at 322. A general mandate does not remove discretion. It must be so specific that it leaves the employee with no "room for choice." *Id.* at 324. To eliminate discretion, a directive must "specifically address[] how an official must confront a given situation." *Lopez v. U.S. Immigr. & Customs Enf't,* 455 F. App'x 427, 433 (5th Cir. 2011). It is the plaintiff's burden to identify a specific mandate that removes discretion. *See Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23. Recognizing that tort actions challenging the government's discretionary policy judgments could "seriously handicap efficient government operations," Congress incorporated the DFE into the FTCA to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see also Sydnes v. United States,* 523 F.3d 1179, 1185 (10th Cir. 2008) ("[W]e operate at a higher level of generality … asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.").

The government need not prove that it considered these factors and made a conscious decision based on them. *See Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010) (per curiam). Indeed, under the second prong, the government actors' subjective intent is immaterial: "[t]he

focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gaubert*, 499 U.S. at 325 (emphasis added); *see also Freeman v. United States*, 556 F.3d 326, 337 (5th Cir. 2009) (subjective intent irrelevant to application of the DFE).  Moreover, "when established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion." *Baldassaro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995) (citing *Gaubert*, 499 U.S. at 325). And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a).

If both prongs of the *Gaubert* test are met, the DFE applies, the court lacks jurisdiction, and the claim must be dismissed. *See Cohen v. United States*, 151 F.3d 1338, 1341 (11th Cir. 1998). This result applies even where the government may have been negligent in the performance of such discretionary acts.  The DFE analysis does not call upon the court to evaluate the merits of a given policy.  As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10. *See Dalehite v. United States*, 346 U.S. 15, 30 (1953).

       b.      **The Army's Prosecutorial Decisions are Discretionary in Nature.**

Plaintiff alleges that the Army should have prosecuted Hughes for the alleged assault of Mrs. L.R.; and informed Plaintiff's mother about the alleged assault before allowing Plaintiff to live with Hughes in base housing. ECF No. 1, ¶¶ 16-17.

Courts have uniformly held that the decision of whether to prosecute a given individual is a discretionary function for which the United States is immune from liability.[7] The DFE bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536-37. As the Supreme Court has stated, "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation omitted). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case,* 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see also Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("as an incident of the constitutional separation of powers, … the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions"); *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) (prosecutorial decisions are "quintessentially" discretionary).[8]

Here, Plaintiff's claims arise specifically from the Army's decision not to prosecute Hughes after fully investigating allegations by Mrs. L.R. that Hughes assaulted her in 2017. Plaintiff's claims are barred by the DFE because the Army's prosecutorial decisions are discretionary in nature, involving choice and judgment. Plaintiff does not and cannot identify any federal statute, or regulation that required the Army to prosecute Hughes. Plaintiff attempts to circumvent application

---

[7] In general, Military Servicemembers are subject to punishment under the Uniform Code of Military Justice (UCMJ, Chapter 47, Title 10, United States Code). Military criminal investigative organizations (MCIOs) have primary jurisdiction over the investigation of serious offences under the UCMJ, which include alleged sex-related offences by a Servicemember.

[8] *See also Blakely v. U.S.S. Iowa*, 991 F.2d 148, 153 (4th Cir. 1993) ("The course that a military investigation takes remains the choice of the officials in charge and implicates policy considerations, making it subject to the discretionary function exception.").

of the DFE by alleging the Army had a duty under the SAPR policy to "thoroughly [] investigate and/or prosecute allegations of sexual assault by service members." ECF No. 1, ¶ 15. To the extent the Court finds the SAPR policy is a federal regulation, Plaintiff's argument still fails. Plaintiff acknowledges that the Army investigated Mrs. L.R.'s claims. But more importantly, the SAPR does not remove prosecutorial discretion or otherwise require the Army to prosecute a servicemember. DoD Directive Number 6495.01, which Plaintiff references in her complaint, clearly states: "It is DoD policy that … The SAPR Program shall … (2) NOT provide policy for legal processes within the responsibility of the Judge Advocates General of the Military Departments provided in Chapter 47 of Reference (b) and the Manual for Courts-Martial (Reference (f)) or for criminal investigative matters assigned to the IG DoD."

In sum, prosecutorial decisions are exactly the kind of conduct the DFE was designed to protect. "The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability." *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) (quoting *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983)). As the Fifth Circuit has explained:

> The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy. If the government could [be] held liable for prosecuting or failing to prosecute such a case, its choices in this area could quite conceivably be affected by such a suit. Thus, a policy decision of the federal government might be influenced by a plaintiff with no governmental responsibility.

*Smith,* 375 F.2d at 247. The policy implications of opening the door to civil tort liability for failure to prosecute would have dramatic consequences and ultimately be detrimental to the criminal justice system. The DFE protects against such negative consequences. For the reasons above, Plaintiff's claims are barred by the DFE and should be dismissed.

3.     **Under Texas Law A Private Person Would Not Be Liable To Plaintiff In Similar Circumstances.**

Plaintiff's claims also fail because the government acts that Plaintiff challenges have no private person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Id.,* § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue need not be exact, a plaintiff must offer "a 'persuasive analogy'" showing that the government actor sued would be subject to liability under state law if he or she were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). Because only the federal government, here the Army, has the authority to enforce federal criminal laws and make investigatory and prosecutorial decisions, there is no private person analogue that would support Plaintiff's claims under the FTCA. The alleged harms are based on the Army's decision not to prosecute Hughes for prior rape allegations, and an alleged failure to warn Plaintiff and her mother of the investigation. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as such the decisions have no private-person

counterpart. *See, e.g., Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997). Because there is no waiver of sovereign immunity as to an alleged failure to prosecute, the Court lacks subject matter jurisdiction.

4.    **There Is No Cause Of Action Under The FTCA For Violating Federal Statutes Or Regulations.**

"[The FTCA] is the exclusive remedy for suits against the United States or its agencies sounding in tort." *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (per curiam). "[T]he FTCA was not intended to redress breaches of federal statutory duties." *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (en banc). The FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs," and is unavailable where "[t]he existence or nonexistence of the claim … depends entirely upon Federal statutes". *United States v. Smith*, 324 F.2d 622, 624-25 (5th Cir. 1963). Accordingly, even if Plaintiff had properly alleged a violation of Federal law or regulation, that would be insufficient to establish a waiver of sovereign immunity because "a federal regulation cannot establish a duty owed to the plaintiff under state law." *Tindall by Tindall v. United States*, 901 F.2d 53, 56 n.8 (5th Cir. 1990) (per curiam).

Two recent cases in this District illustrate these points. In *Kristensen,* and *Holcombe*, courts in the Western District of Texas distinguished claims of a private right of action for failure to follow Federal regulations from claims for negligent undertaking under Texas common law. In *Kristensen*, the Court found in favor of the United States and the Fifth Circuit affirmed. *Kristensen v. United States,* 372 F. Supp. 3d 461, 469 (W.D. Tex. 2019). In *Holcombe*, the court found the government liable for breach of a duty voluntarily assumed by affirmative conduct. *Holcombe,* 388 F. Supp. 3d at 805. Here, in contrast, Plaintiff fails to allege that the Army violated a specific Federal law or regulation under which it had affirmatively assumed a duty to Plaintiff. Instead, Plaintiff makes

vague allegations that Defendant "fail[ed] to follow its own regulations" (ECF No. 1, ¶ 7) or "deviated from [various] policies," (*id.,* ¶¶ 28-29). Where Plaintiff does reference regulations, they are either non-specific or irrelevant.

Plaintiff states: "Per DOD policy, all unrestricted[9] reports of adult sexual assault offenses must be taken to a special court-martial convening authority (SPCMCA) for the initial decision on disposition." ECF No. 1, ¶ 10. At all times relevant to this case, this was true.[10] However, Plaintiff then alleges Defendant "decided not to follow that DOD policy and failed to take any action against SSG Hughes at that time." ECF No. 1, ¶ 10. This is a non-sequitur; Plaintiff does not allege that there was a regulation requiring "any action against SSG Hughes." The SPCMCA was merely the level of authority at which discretion had to be exercised. Commanders had the discretion to pursue the full range of disposition options available for substantiated allegations: criminal charges, non-judicial punishment, administrative action, or no action. Rule for Courts-Martial [R.C.M.] § 306(c)(1), Manual for Courts-Martial, United States (2019 ed.) ("A commander may decide to take no action on an offense. If charges have been preferred, they may be dismissed."). Acting under a policy of such discretion is readily distinguishable from deviating from a nondiscretionary policy. *See Barron v. United States*, 31 F.4th 347, 351 (5th Cir. 2022) ("To be discretionary, an action must

---

[9] Under DoD policy, servicemembers and their adult dependents have two reporting options - Restricted Reporting and Unrestricted Reporting. Under Unrestricted Reporting, both the command and law enforcement are notified. With Restricted (Confidential) Reporting, the adult sexual assault victim can access healthcare, advocacy services, and legal services without the notification to command or law enforcement. DoD Directive 6495.01 § (k).

[10] "Subject: Withholding Initial Disposition Authority Under the Uniform Code of Military Justice in CertainSexual Assault Cases" (Apr. 20, 2012), *available at* https://dacipad.whs.mil/images/Public/10-Reading_Room/00_WhatNew/SecDef_Memo_ Withholding_Initial_Disposition_Authority_20120420.pdf. In 2021, Congress modified the UCMJ to transfer prosecutorial discretion for sexual assault cases away from Commanders to career prosecutors. *See* National Defense Authorization Act for Fiscal Year 2022 [FY22 NDAA], Pub. L. No. 117-81, § 543, 135 Stat. 1541 (2021).

involve "an element of judgment or choice.").

Similarly, Plaintiff alleges the Army had a "duty under the [DoD's] Sexual Assault Prevention and Response ("SAPR") policy" to "investigate and/or prosecute allegations of sexual assault," but that "[t]he available range of dispositions did not include sweeping the matter under the rug." ECF No. 1, ¶ 15. The Army is required to investigate unrestricted sexual assault reports. DoD Instruction § 5505.18. However, Plaintiff's vague allegation that the Army swept "the matter under the rug" is not supported by specific allegations or any regulatory requirement.

Plaintiff alleges the Army undertook through its SAPR policies to "prevent sexual assaults by military personnel," and "deviated from these policies in its handling of the claims made by [Mrs. L.R.] in 2017," but does not allege a specific deviation from any policy. ECF No. 1, ¶¶ 28-29. Instead, Plaintiff makes a specious analogy to sexual assault allegations involving Catholic priests and, in a conclusory fashion, asserts that the Army "turn[ed] a blind eye to a documented rape." *Id.*, ¶ 29. Irrespective of compliance with the obligation to investigate servicemembers under the SAPR, that policy does not create a separate duty to prevent alleged sexual assault of third parties like Plaintiff.

Plaintiff states that the Army "needed to approve Lesley's moving on base with SSG Hughes at Fort Bliss" and that it "should not have [done so], either under its regulations or under common law" or, alternatively, that before granting approval the Army "should have informed Lesley and/or her mother of the allegations against SSG Hughes," but does not reference a specific regulatory provision in support of these claims. *Id.*, ¶¶ 12-13, 17, 30. Similarly, Plaintiff states that the Army "failed to remove SSG Hughes from on-base housing at Fort Bliss, despite clear authority to do so," without explaining the basis of this supposedly "clear" authority or any rationale for exercising it. *Id.*, ¶ 29. To the extent Plaintiff argues that Army Regulation 420-1 Army Facilities

Management supports her claim that the Army needed to approve her living on Fort Bliss, that approval is discretionary, and the regulation contains no requirement to consider unrelated sexual assault allegations in making the decision.

Therefore, insofar as Plaintiff seeks recovery of damages from the United States for violations of DoD regulations that Plaintiff alleges imposed investigatory, prosecutorial, and notification obligations on the Army, her claims are not actionable under the FTCA.  Accordingly, the Court has no subject matter jurisdiction over Plaintiff's claims and, therefore, dismissal is appropriate.

**C.      There Is No Legal Duty Under Texas Law To Notify Third Parties Of A Pending Investigation.**

Alternatively, should the Court find that it has subject matter jurisdiction in this case, Plaintiff's negligence claims should still be dismissed because the United States has no duty to notify Plaintiff and/or her mother of the allegations or investigation involving Hughes, or to prosecute Hughes. According to Plaintiff, the Army owed Plaintiff a duty to inform her and/or her mother of the allegations against Hughes made by Mrs. L.R. before it approved Plaintiff's move into on-base housing at Fort Bliss. ECF No. 1, ¶ 30.

Under Texas law, the threshold inquiry in any negligence case is whether the defendant owes a legal duty to the plaintiff. *See Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993) ("It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability."). *See also Nabors Drilling, U.S.A., Inc. v. Escoto,* 288 S.W.3d 401, 404 (Tex. 2009*); Hayes v. United States,* 899 F.2d 438, 443 (5th Cir. 1990). Here, Plaintiff cannot establish any Texas law that would create a legal duty for the Army to inform a spouse, former spouse, or parent of a servicemember's child when an unrelated adult has made an allegation of sexual assault against a servicemember, or after a Commander has made a non-prosecution decision with respect to such an allegation. In

fact, publicizing such an allegation or decision to a third party without specific authority could violate the Privacy Act. 5 U.S.C. § 552a(i)(1). For those reasons Plaintiff cannot establish a negligence claim against the United States, and her claims should be dismissed.

## II.     CONCLUSION

Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(1) because the United States has not waived its sovereign immunity as to any of Plaintiff's claims. Therefore, the Court lacks subject matter jurisdiction over Plaintiff's claims. Defendant respectfully prays that this cause be dismissed with prejudice and for such further relief to which Defendant may be justly entitled.

Respectfully submitted,

**ASHLEY C. HOFF**
UNITED STATES ATTORNEY

*/s/ Natashia D. Hines*
**NATASHIA D. HINES**
Assistant United States Attorney
Florida Bar No. 89072
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
Email: Natashia.Hines@usdoj.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to the following CM/ECF participant:  Guy G. Fisher, Provost Umphrey Law Firm, LLP, and Lynn A. Coyle, Coyle & Benoit, PLLC, *Attorneys for Plaintiff*.

*/s/ Natashia D. Hines*
**NATASHIA D. HINES**
Assistant United States Attorney