**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CHAYLA LESLEY MADSEN,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **EP-22-CV-00276-DCG** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| ***Defendant.*** | § | |

**ORDER ACCEPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS**

Defendant, the United States of America, moves to dismiss Plaintiff Chayla Lesley Madsen's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[1] U.S. Magistrate Judge Laura Enriquez issued a Report and Recommendation ("R. & R.") advising the Court to grant Defendant's Motion and dismiss the case.[2] For the following reasons, the Court **ACCEPTS** the R. & R. and **GRANTS** the Motion.

[1] *See* Mot., ECF No. 11.

[2] *See* R. & R., ECF No. 23.

# I. INTRODUCTION

## A. Factual Background[3]

This is a Federal Tort Claims Act (an "FTCA") case stemming from former Army Staff Sergeant Randall Hughes's ("Hughes") egregious sexual misconduct.[4]

Plaintiff is Hughes's biological daughter.[5] In 2017, Hughes applied for Army approval to allow Plaintiff—then 14 years old—to move into on-base housing with him at Fort Bliss, Texas.[6] The Army granted that approval, and Plaintiff moved in with Hughes in December 2017.[7]

Over the next two-and-a-half years, Hughes subjected Plaintiff to inappropriate and often sexual conduct.[8] While at Fort Bliss, Hughes supplied Plaintiff with marijuana and alcohol, pressured her to drink with him, and even gifted Plaintiff—again, 14 years old at the time—a vibrator.[9] Hughes would also talk to her "about sexual matters such as masturbation."[10]

---

[3] For the purposes of this Order, the Court accepts all factual allegations in Plaintiff's Complaint as true. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (instructing that "[i]n ruling on a motion to dismiss for lack of subject matter jurisdiction," courts must "accept all factual allegations in the plaintiff's complaint as true").

[4] *See generally* Compl., ECF No. 1.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[5] *Id.* at 3.

[6] *See id.* at 4–5.

[7] *See id.*

[8] *See id.* at 6–7.

[9] *See id.*

[10] *Id.*

In late 2018, the Army transferred Hughes (and, by extension, Plaintiff) to Fort Dix in New Jersey.[11] From there, Hughes's inappropriate behavior escalated. On one occasion, Hughes "suggested that [he and Plaintiff] could have sex."[12] On another, Hughes "got into bed with [Plaintiff] and molested her with his hands."[13] Finally, in March 2020, Plaintiff alleges that Hughes drugged her with a sleeping pill and raped her.[14]

**B. Procedural History**

On August 11, 2022, Plaintiff filed a Complaint—not against Hughes, but instead against the United States under the FTCA.[15] According to Plaintiff, the Army was aware that Hughes had been accused of raping another soldier's wife before it approved his application for Plaintiff to move in with him.[16] Based on that awareness, Plaintiff alleges that the Government breached duties to observe various policies and regulations aimed at preventing sexual assaults by military personnel by:

(1) failing to properly investigate or prosecute Hughes;[17]

(2) approving Hughes's application for on-base housing;[18] and

---

[11] *See id.* at 7.

[12] *Id.*

[13] *Id.*

[14] *See id.* at 7–8.

[15] *See generally id.*

[16] *See id.* at 3–5.

Hughes was later prosecuted for and pleaded guilty to that rape. *See id.* at 5.

[17] *See id*. at 5–6 (critiquing the Government's investigation into Hughes's misconduct); *id.* at 10–11 (arguing that the Government "deviated from [its] policies" and breached a duty owed to Plaintiff by "initially failing to prosecute SSG Hughes despite compelling evidence that prosecution was warranted").

[18] *See id*. at 11 (arguing that the Government breached a duty owed to Plaintiff "by approving [Plaintiff] moving into housing occupied by SSG Hughes on Fort Bliss").

(3) failing to inform Plaintiff or her mother of the allegations that Hughes had raped another soldier's wife.[19]

Had the Government followed its policies, Plaintiff argues that she would never have moved in with Hughes and (thus) wouldn't have been subjected to his vile behavior.[20]

On November 28, 2022, the Government moved to dismiss the Complaint for lack of subject matter jurisdiction.[21] While the Government concedes that Hughes's alleged actions "were reprehensible,"[22] it argues that "the United States has not waived its sovereign immunity with respect to any of Plaintiff's claims."[23] That's because, according to the Government:

(1) the FTCA's intentional torts exception "precludes liability for certain intentional torts, such as assault, battery, and misrepresentation";[24]

(2) "the FTCA's discretionary function exception bars Plaintiff's claims";[25]

(3) a private person would not be liable to Plaintiff under similar circumstances (as the FTCA requires for liability to attach);[26] and

(4) the FTCA does not create a cause of action for violations of federal policies.[27]

---

[19] *See id.* ("The Army owed a duty to inform [Plaintiff] and/or her mother of the credible allegations [of sexual assault] against SSG Hughes . . . before it approved [Plaintiff's] moving into on-base housing at Fort Bliss.").

[20] *See id.*; *see also id.* at 5–6.

[21] *See generally* Mot.

[22] *See* Reply, ECF No. 15, at 1.

[23] *See* Mot. at 1.

[24] *Id.* at 2.

[25] *Id.*

[26] *Id.* at 2, 17.

*See infra* note 52 and accompanying text.

[27] Mot. at 2.

In response, Plaintiff insisted that the FTCA ***does*** waive sovereign immunity for her claims and therefore asked the Court to deny the Motion.[28] Alternatively, Plaintiff requested that the Court decline to rule on the Motion and allow her to conduct limited discovery.[29]

The Court subsequently referred the Motion to United States Magistrate Judge Laura Enriquez,[30] who issued an R. & R. on August 28, 2025.[31] In that R. & R., Judge Enriquez concluded that, although the FTCA doesn't necessarily bar claims relating to assault,[32] Plaintiff's claims fall outside the FTCA's waiver of sovereign immunity based on:

(1) the intentional torts exception (specifically, the misrepresentation exception);

(2) the discretionary function exception;

(3) the absence of a private person analogue; and

(4) the absence of any FTCA-based cause of action for alleged violations of federal laws or regulations.[33]

Judge Enriquez further concluded that permitting Plaintiff to conduct discovery would be futile "considering the current law applicable to the claims."[34] Judge Enriquez therefore recommends dismissing the Complaint for lack of subject matter jurisdiction.[35]

---

[28] *See generally* Resp., ECF No. 13.

[29] *See id.* at 7–8, 19–20.

[30] *See* Referral Order, ECF No. 22.

[31] *See generally* R. & R.

[32] *See id.* at 5–10.

[33] *See id.* at 10–19.

[34] *See id.* at 20.

[35] *See id.*

Both parties objected to the R. & R. in part.[36] Plaintiff objects to all but Judge Enriquez's conclusions that (1) the FTCA doesn't preclude liability for "arising out of assault" claims;[37] and (2) the discretionary function exception bars claims for alleged failures to investigate or prosecute.[38] The Government, on the other hand, objects to Judge Enriquez's conclusion that "the FTCA's intentional torts exception does not preclude liability for 'arising out of assault' claims,"[39] but not to the rest of the R. & R.[40]

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows parties to seek dismissal of claims for lack of subject matter jurisdiction. A motion under Rule 12(b)(1) should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of a claim entitling the plaintiff to relief."[41] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[42]

---

[36] *See* Pl.'s Objs., ECF No. 27; Def.'s Objs., ECF No. 26.

[37] *See* Pl.'s Resp. Def.'s Objs., ECF No. 28, at 1–2 (arguing that Judge Enriquez correctly determined that the intentional torts exception doesn't necessarily bar claims that arise out of assaults).

[38] *See* Pl.'s Objs. at 7 (stating that "[plaintiff] does not generally challenge the Army's conduct of the investigation or prosecution" of Hughes).

[39] Def.'s Objs. at 7.

[40] *See id.* at 1.

[41] *Morris v. United States*, 176 F.4th 355, 359 (5th Cir. 2026) (citation modified).

[42] *Id.* (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996) (citation modified)).

### B. Standard of Review

The standard by which a district court reviews a magistrate judge's conclusions "ultimately depend[s] on whether the referred matter is properly characterized as dispositive or non-dispositive."[43] Where, as here, a magistrate judge issues recommendations in connection with a dispositive motion, the district court reviews those recommendations: (1) *de novo*, if objected to;[44] or (2) for clear error or abuse of discretion, if not objected to.[45]

## III. DISCUSSION

The salient issue here is whether the FTCA's waiver of sovereign immunity applies to Plaintiff's claims. The Court will first discuss the FTCA and the exceptions that (according to the Government) bar Plaintiff's claims.[46] The Court will then assess whether those exceptions foreclose Plaintiff's claims.[47]

---

[43] *Farrell v. AT&T Corp.*, No. EP-18-CV-00089-PRM, 2018 WL 11347196, at *4 (W.D. Tex. Nov. 8, 2018) (first citing *Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 410062, at *2 (N.D. Tex. Jan. 30, 2015); and then citing W.D. TEX. L.R. CV-7(c)).

[44] *E.g.*, *Pizana v. Ulta Beauty Cosms., LLC*, No. CV 1:25-CV-264, 2026 WL 1399928, at *1 (S.D. Tex. May 19, 2026) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

[45] *E.g.*, *Young v. Martin Marietta Materials Inc.*, No. 6:22-CV-00272, 2023 WL 36069, at *1 (E.D. Tex. Jan. 4, 2023) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)).

[46] *See infra* Section III.A.

[47] *See infra* Section III.B.

### A. The FTCA

"The United States has sovereign immunity from any lawsuit, unless that sovereign immunity has been waived."[48] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit,"[49] in which case there is no jurisdiction.[50]

The FTCA provides such a "waiver of sovereign immunity" and is "the sole basis of recovery for tort claims against the United States."[51] Specifically, the FTCA allows the United States to be held liable for its employees' torts in circumstances where the United States—if it were a private person—would be liable under the law of the state in which the tort occurred.[52]

There are, however, "several statutory exceptions to the FTCA's waiver of sovereign immunity"[53]—two of which are particularly relevant for the purposes of this Order. The first such exception is known as the "discretionary function exception," which bars FTCA claims that

---

[48] *M.D.C.G. v. United States*, 956 F.3d 762, 767–68 (5th Cir. 2020) (citing *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006)).

[49] *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

[50] *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

[51] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012) (citation modified).

*See also* 28 U.S.C. § 1346; *id.* §§ 2671, *et seq.*

[52] *See* 28 U.S.C. § 1346 ("[D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . [based on] the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *id.* § 2674 ("The United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under like circumstances.").

*See also* Mot. at 2 (arguing that the FTCA doesn't apply here because Plaintiff's claims have no private person analogue); *id.* (arguing that the FTCA doesn't apply here because alleged violations of federal law don't give rise to FTCA liability "under the law of the state in which the tort occurred").

[53] *M.D.C.G.*, 956 F.3d at 768.

stem from "a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[54] In *United States v. Gaubert*, the Supreme Court established a two-prong test to determine whether the discretionary function exception applies.[55] First, courts must determine whether the challenged conduct is "discretionary in nature"—that is, whether the conduct "involves an element of judgment or choice."[56] If it does, the Court must then determine whether the exercised judgment or choice "is of the kind that the discretionary function exception was designed to shield."[57] "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy," it "protects only governmental actions and decisions based on considerations of public policy."[58]

The other relevant exception is the "intentional tort exception," which bars FTCA claims arising out of (among other things) misrepresentation.[59] Under this specific exception—which the Court will refer to as the "misrepresentation exception"—"[i]f the conduct upon which a claim is based constitutes a claim 'arising out of'" misrepresentation, "then the federal courts have no jurisdiction to hear that claim."[60]

---

[54] 28 U.S.C. § 2680(a).

[55] *See* 499 U.S. 315, 322–23 (1991).

[56] *Id.* at 322 (citation modified).

[57] *Id.* at 322–23 (citation modified).

[58] *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537) (citation modified).

[59] 28 U.S.C. § 2680(h).

[60] *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citing cases).

**B. Plaintiff's Claims**

As noted above, Plaintiff alleges that the Government's:

(1) failure to properly investigate or prosecute Hughes;

(2) decision to approve Hughes's application for Plaintiff to move into on-base housing with him; and

(3) failure to inform Plaintiff or her mother of the sexual assault allegations against Hughes

each give rise to FTCA liability.[61] The Government, however, argues that the Court doesn't have subject matter jurisdiction over any of those claims.[62]

**1. The Government's failure to investigate or prosecute Hughes**

The Court begins with Plaintiff's claims that the Government's alleged failures to investigate or prosecute Hughes give rise to FTCA liability.[63] As Judge Enriquez observed, courts have long recognized investigatory and prosecutorial decisions as discretionary conduct protected by the discretionary function exception.[64] Applying *Gaubert*'s two-step analysis, Judge Enriquez concluded that:

(1) although Plaintiff cited the various Army regulations that address sexual misconduct, those regulations "d[id] not establish a sufficiently specific directive" "that would make prosecutorial and investigative processes non-discretionary functions";[65] and

[61] *See supra* notes 17–20 and accompanying text.

[62] *See supra* notes 24–27 and accompanying text.

[63] *See* Compl. at 5–6, 10–11.

[64] *See* R. & R. at 16 (citing *Sutton v. United States*, 819 F.2d 1289, 1294–95 (5th Cir. 1987)).

[65] *Id.* at 17.

(2) the judgment of whether or how to investigate or prosecute misconduct is the type of discretionary function that the exception was designed to shield.[66]

Accordingly, Judge Enriquez concluded that the discretionary function exception bars these claims.[67]

Plaintiff "does not contest" this portion of the R. & R.[68] Rather, she concedes that "decisions generally on whether to prosecute a soldier [are] a discretionary action that the federal courts may not second-guess in an FTCA action," and that she "does not generally challenge the Army's conduct of the investigation or prosecution of [Hughes]."[69] The Government doesn't object to this portion of the R. & R. either.[70]

Because neither party objected to the R. & R., the Court reviews Judge Enriquez's conclusions for clear error.[71] Seeing none,[72] the Court accepts Judge Enriquez's

---

[66] *Id.* at 17–18.

[67] *See id.*

[68] Pl.'s Objs. at 7.

[69] *Id.*; *see also* Resp. at 16 ("The Government is correct that the Army's decisions on whether to prosecute a soldier [are] discretionary decision[s] that the federal courts may not second-guess in an FTCA action.").

Plaintiff did argue in response to the Government's Motion to Dismiss that her claim that the Government "failed to engage in investigatory tasks that were non-discretionary" fell "outside the discretionary function exception." *See* Resp. at 17–19 (discussing the Army's Sexual Assault Prevention and Response Program). She didn't, however, object to the R. & R. on that basis. *See generally* Pl.'s Objs.; *see also Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections [to a magistrate judge's report and recommendation] must specifically identify those findings objected to." (citation modified)).

[70] *See generally* Def.'s Objs.

[71] *See supra* note 45 and accompanying text.

[72] *See Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) ("[L]aw enforcement decisions by U.S. Attorneys on when, where, and how to investigate, and whether to prosecute, fall within the ambit of the discretionary function exception."); *see also Kelly v. United States,* 924 F.2d 355, 362 (1st Cir. 1991) ("Since decisions to investigate, or not, are at the core of law enforcement activity, the bureau chiefs' challenged conduct involved precisely the kind of policy-rooted decisionmaking that

recommendation and concludes that the FTCA's discretionary function exception bars Plaintiff's claims based on alleged failures to investigate or prosecute Hughes.[73]

**2. The Government's decision to approve Hughes's application for on-base housing**

The Court next addresses Plaintiff's claim stemming from the Government's decision to approve Hughes's application to have Plaintiff move into on-base housing with him.[74] Here too,

---

section 2680(a) was designed to safeguard."); *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." (citing cases)).

[73] Plaintiff also alleges that the Government breached a duty owed to her by "failing to impose any real discipline on SSG Hughes," including by failing to (1) court-martial him; (2) "involuntarily separate" him from service; and (3) remove him from on-base housing. *See* Compl. at 6, 11. Yet, Plaintiff didn't specifically argue that the Court has jurisdiction over those claims when she opposed the Government's Motion to Dismiss. *See generally* Resp. Nor did she raise that argument when she objected to the R. & R. *See generally* Pl.'s Objs. The Court deems those claims waived. *See Terry Black's Barbeque, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when [she] fails to address the claims or oppose a motion challenging those claims."); *City of Hearne v. Johnson*, 929 F.3d 298, 300 n.1 (5th Cir. 2019) ("Plaintiffs waive an argument when they fail to argue or brief it to the district court and instead only make general reference to it." (citation modified)); *see also* Mot. at 22 (asking the Court to dismiss all of Plaintiff's claims for lack of subject matter jurisdiction).

Even if the Court considered those claims, however, each fails. To the extent Plaintiff argues that the Government is liable for failing to court-martial Hughes, that claim fails for the same reasons as Plaintiff's failure to investigate or prosecute claims. *See supra* notes 63–67 & 71–72 and accompanying text. To the extent Plaintiff argues that the Government should have "involuntarily separated" or discharged Hughes, the Supreme Court has indicated that this type of military "decision of command" isn't subject to judicial review. *See United States v. Shearer*, 473 U.S. 52, 58–59 (1985) (explaining that military disciplinary decisions—including "whether to overlook a particular incident or episode" or "whether to discharge a serviceman"—fail as the "type of claims that . . . would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness"). Finally, to the extent Plaintiff argues that the Government should have removed Hughes from on-base housing, that claim fails for the same reasons as Plaintiff's claim that the Government shouldn't have approved Hughes's on-base housing application in the first place. *See infra* Section III.B.2.

[74] *See* Compl. at 11 ("The Army had a . . . duty, in light of [the allegations of sexual assault against Hughes], not to approve [Plaintiff's] moving into housing with [Hughes] at Fort Bliss."); *see also* Pl.'s Objs. at 8–9 (arguing that regulations impose a non-discretionary duty for the Government to deny housing applications under circumstances like here).

Judge Enriquez applied *Gaubert*'s two-step framework—concluding that the discretionary function exception bars Plaintiff's claim because:

(1) applicable regulations entrust the decision whether to approve or deny a housing request to the Government's discretion; and

(2) decisions of whether to approve housing requests "concern public policy" and are therefore shielded from judicial second-guessing.[75]

Judge Enriquez therefore recommends that the Court dismiss this claim as barred by sovereign immunity.[76]

Plaintiff objects to Judge Enriquez's conclusions at *Gaubert* prong one, but not to Judge Enriquez's conclusions at *Gaubert* prong two.[77] The Court therefore reviews the former *de novo*[78] and the latter for clear error.[79]

Beginning with *Gaubert*'s first prong, Plaintiff points to an Army housing regulation requiring that "[a]pproved occupancy [on a military installation] <u>will</u> . . . not adversely impact [the] health, safety, morale, or welfare of the installation."[80] Plaintiff interprets this regulation as affirmatively barring the Army from approving a housing application like the one at issue here—

---

[75] *See* R. & R. at 18–19.

[76] *See id.* at 19.

[77] *See* Pl.'s Objs. at 7–9.

[78] *See supra* note 44 and accompanying text.

[79] *See supra* note 45 and accompanying text.

[80] *Id.* at 8–9 (quoting AR 420-1, Chapter 3, § 3-17 ("Occupancy of Family housing") [Reg. 3-17]).

The parties disagree over whether Plaintiff would have been considered a "Family member" or a "non-Family member" for the purposes of the Army's housing regulations. *Compare* Pl.'s Objs. at 8 (arguing that Plaintiff was a "non-Family member" and, thus, § 3-17 applied), *with* Reply at 6 (arguing that Plaintiff was a "Family member" and, thus, § 3-16 applied). The Court need not resolve that issue—even assuming § 3-17 applied as Plaintiff asserts, the discretionary function exception bars her on-base-housing-related claim. *See generally infra.*

namely, where a soldier who is "under investigation for a brutal rape" applies to have his minor daughter live with him in on-base housing.[81] Plaintiff thus contends that the Army had no discretion to approve Hughes's application, and that Judge Enriquez erred in concluding otherwise.[82]

The Court disagrees. While it's true that regulations can impose non-discretionary directives, that's only the case where those directives leave "no room for choice or judgment."[83] If, for example, regulations required the Government to deny on-base housing applications from soldiers who were under investigation for sexual assault, that sort of directive might prove specific enough to make denying Hughes's housing application non-discretionary.[84]

That, however, isn't the case here. Despite Plaintiff's assertion that "[t]he language 'will'" in the above-referenced regulation "is not discretionary,"[85] the same regulation commands the Government to weigh four enumerated considerations (health, safety, morale, and welfare of the installation) before approving or denying a non-Family member's move into on-base housing.[86] This type of interest balancing is a hallmark of discretionary decisionmaking.[87]

---

[81] *See* Pl.'s Objs. at 9.

[82] *See id.*

[83] *See Gaubert*, 499 U.S. at 324.

[84] *Cf. D.A. v. United States*, 663 F. Supp. 3d 715, 740 (W.D. Tex. 2023) (concluding that a regulation requiring ICE officers to ensure that "detainees are properly secured before the transport begins" stripped the Government of discretion over whether to transport a detainee without securing her with a seatbelt); *Bolt v. United States*, 509 F.3d 1028, 1032 (9th Cir. 2007) (concluding that a regulation requiring the Army to clear snow at least "once per year, in late February or March" "impose[s] a specific and mandatory duty" that the Army had no discretion to ignore).

[85] Pl.'s Objs. at 9.

[86] *See* Reg. 3-17.

[87] *See Myers v. United States*, 17 F.3d 890, 898 (6th Cir. 1994) (construing *Gaubert* as instructing that interest balancing "characterizes the type of discretion that the discretionary function exception was intended to protect" (citing *Gaubert,* 499 U.S. at 332)); *see also Garza v. United States*, 161 F. App'x

And given that the Government has long exercised discretion over when and whether to allow civilians on military bases, the regulation's grant of discretion here is unsurprising.[88] The Court therefore concludes that the Government's approval of Hughes's on-base housing application was "discretionary in nature."[89]

As for *Gaubert*'s second prong, the Court finds no clear error in Judge Enriquez's conclusion that the Government's approval was susceptible to policy analysis. Decisions concerning who may reside on a military base necessarily implicate judgments about security, safety, morale, welfare, and the administration of military housing.[90] Those considerations fall squarely within the Government's policy-based discretion—especially where, as here, the Government must determine how allegations of misconduct against a soldier bear on the housing decision.[91]

With the benefit of hindsight, it's clear that the Government shouldn't have approved Hughes's request to have Plaintiff move in with him. One could even argue (as Plaintiff does)[92]

---

341, 345 (5th Cir. 2005) (concluding that the discretionary function exception applied where a decision "involve[d] [a] weighing of competing policy considerations").

[88] *See, e.g.*, *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 893 (1961) (recognizing the "historically unquestioned power of a commanding officer summarily to exclude civilians from the area of his command"); *Tokar v. Hearne*, 699 F.2d 753, 757 (5th Cir. 1983) ("A base commander has wide discretion as to whom he may exclude from his base.").

[89] *See Gaubert*, 499 U.S. at 322.

[90] *See, e.g.*, *supra* notes 86–87 and accompanying text; *see also Wood v. United States*, 845 F.3d 123, 131 (4th Cir. 2017) ("Military operation decisions are the kind of government policy choices the discretionary function was designed to shield."); *Ross v. United States*, 129 F. App'x 449, 451 (10th Cir. 2005) (expressing "little doubt" that the decisions surrounding the operation of an air force base "involve policy choices of the most basic kind").

[91] *See supra* note 72 (citing cases explaining that whether and how to investigate or prosecute allegations of misconduct involves policy-based decisionmaking).

[92] *See* Compl. at 6, 11; Pl.'s Objs. at 8–9.

that the consequences of approving that request should have been apparent before the Government gave its approval. But, as the FTCA makes clear, the discretionary function exception applies "***whether or not the discretion involved be abused***."[93] Under these circumstances, the discretionary function exception applies and bars Plaintiff's housing-related claim.[94]

**3. The Government's failure to disclose the allegations against Hughes**

Finally, the Court addresses Plaintiff's claim that the Government had a duty to (but didn't) inform Plaintiff or her mother of the sexual assault allegations against Hughes.[95] Judge Enriquez concluded that this claim arises out of misrepresentation,[96] which is among the torts that the FTCA excludes from the Government's waiver of sovereign immunity.[97] Plaintiff objected to that conclusion, so the Court will review the issue *de novo*.[98]

---

[93] 28 U.S.C. § 2680(a) (emphasis added); *see also Martin Operating P'ship, L.P. v. United States*, 616 F. App'x 688, 697 (5th Cir. 2015) ("Because the Coast Guard's decision is susceptible to social, economic, or public policy analysis, the discretionary function must apply even if the decision was incorrect. Indeed, the discretionary function would apply even if the Coast Guard had abused its discretion.").

[94] On June 3, 2026, Plaintiff filed a "Notice of Supplemental Authority" directing the Court's attention to the Fifth Circuit's decision in *Morris v. United States*. *See* Notice, ECF No. 29, at 1 (citing 176 F.4th 355 (5th Cir. 2026)). In that case, the Fifth Circuit determined that, although the discretionary function exception protects policy-based decisionmaking, it does not protect the Government—or one of its agents'—failure to follow through with that decision. *See Morris*, 176 F.4th at 371–72. Here, Plaintiff's claim focuses on the Government's decision to approve Hughes's on-base-housing request rather than an alleged failure to follow through with that decision. *See* Compl. at 6, 11. The same is true of Plaintiff's claim based on the Government's alleged failure to investigate or prosecute Hughes. *See id.* at 10–11. *Morris*'s application of the discretionary function exception is therefore distinguishable.

[95] *See* Compl. at 11.

[96] *See* R. & R. at 10–12.

[97] *See McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993) (explaining that the FTCA "bars claims against the United States 'arising out of . . . misrepresentation, deceit, or interference with contract rights.'" (quoting 28 U.S.C. § 2680(h))).

[98] *See* Pl.'s Objs. at 10; *see also supra* note 44 and accompanying text.

Plaintiff argues that her claim doesn't arise out of misrepresentation because she "alleges a complete failure to communicate, not a misrepresentation in any communication."[99] The FTCA's misrepresentation exception, however, encompasses both affirmative misstatements and omissions of material fact.[100] Thus, the fact that Plaintiff alleges a failure to communicate isn't dispositive of whether the misrepresentation exception bars her claim.

Whether the misrepresentation exception applies here instead turns on whether the plaintiff's injury "depends upon" a misrepresentation.[101] If the misrepresentation is "merely collateral" to the source of the plaintiff's injury—*i.e.*, if the plaintiff would have been injured whether or not the Government made a misrepresentation—then the misrepresentation exception does not apply.[102] If, however, the plaintiff's injury ***does*** "depend upon" a misrepresentation, then the misrepresentation exception applies.[103]

Two Fifth Circuit decisions illustrate the circumstances in which the misrepresentation exception applies—and those in which it does not. The first is *Life Partners Inc. v. United*

[99] *See* Pl.'s Objs. at 10.

[100] *See McNeily*, 6 F.3d at 346 (explaining that the FTCA's misrepresentation exception "covers both affirmative acts of misrepresentation and omissions of material fact"); *see also JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1266 (11th Cir. 2000) ("[F]ailure to communicate, as well as direct miscommunication, is encompassed by the misrepresentation exception." (citing *United States v. Neustadt*, 366 U.S. 696, 706–07 (1961))).

[101] *See Morris*, 176 F.4th at 360.

[102] *See id.*

[103] *See id.*

The Fifth Circuit instructs that, where a claim depends upon a misrepresentation, courts then "move on to . . . consider whether sovereign immunity has been waived independently of the FTCA." *See id*. (citing *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011)). Plaintiff, however, doesn't allege any applicable waiver of sovereign immunity outside the FTCA. *See generally* Compl. Nor can the Court identify any such waiver applicable to her tort claims. *See, e.g.*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012) (explaining that the FTCA "provides the sole basis of recovery for tort claims against the United States").

*States*, in which a corporation (Life Partners) sued the Small Business Administration ("SBA") alleging that:

> (1) the SBA falsely characterized the status of a life insurance policy to Life Partners, which caused
>
> (2) Life Partners to pay for a policy that had already been assigned to another party.[104]

Life Partners argued that the FTCA's misrepresentation exception didn't apply because the SBA's negligent record-keeping (as opposed to a misrepresentation) was the root of its injury.[105] The Fifth Circuit disagreed, observing that "even assuming the SBA had performed a task negligently," "Life Partners would have suffered no injury absent the misrepresentation."[106] For that reason, the Fifth Circuit determined that Life Partners' claim was "barred as one for misrepresentation."[107]

Contrast *Life Partners* with *Metropolitan Life Insurance Company v. Atkins*.[108] There, the sister of a deceased individual sued the Government based on a federal personnel clerk's failure to preserve a copy of the deceased's beneficiary form, which prevented her from recovering on her brother's life insurance policy.[109] Although the Government argued that the claim arose from its alleged failure to inform the sister that the clerk had misplaced the document (in which case the FTCA's misrepresentation exception would apply),[110] the Fifth Circuit held

---

[104] *See Life Partners*, 650 F.3d at 1028–29, 1034.

[105] *See id.* at 1030.

[106] *Id.* at 1033.

[107] *Id.* at 1033–34.

[108] *See generally* 225 F.3d 510, 512 (5th Cir. 2000).

[109] *Id.* at 511.

[110] *See id.* at 512.

that the crux of the claim was the Government's misplacing the document in the first place.[111] "[B]ecause the negligent performance of an operational task caused the harm," the Fifth Circuit concluded that "the negligent misrepresentation exception to FTCA's waiver of sovereign immunity d[id] not apply."[112]

Plaintiff's claim is more *Life Partners* than *Metropolitan Life Insurance Company*. She alleges that, had the Government disclosed information pertaining to Hughes's sexual assault allegations, she wouldn't have moved in with Hughes and (thus) wouldn't have been subjected to Hughes's abuse.[113] In other words, Plaintiff argues that she wouldn't have been injured but for the Government's failure to disclose. This is precisely the type of "chain of causation" that Fifth Circuit case law indicates is subject to the misrepresentation exception.[114] The Court therefore concludes that Plaintiff's claim based on the Government's failure to disclose the sexual assault allegations against Hughes is also barred.

**C. Plaintiff's Request to Conduct Discovery**

As an alternative to denying the Motion to Dismiss, Plaintiff requests that the Court decline to rule on the Motion, allow her to conduct limited discovery, and grant her leave to amend her Complaint.[115] District courts generally must rule on immunity defenses before

---

[111] *See id.* at 512–13.

[112] *Id.* at 513.

[113] *See, e.g.*, Compl. at 5 ("If the Army had been forthcoming to [Plaintiff] or her mother with this information [about the allegations of sexual assault levied against Hughes], [Plaintiff] would never have gone to Fort Bliss to live with . . . Hughes."); *see also id.* at 11 (alleging that the Government "breached [its duty] by failing to inform [Plaintiff] and/or her mother of the allegations against [Hughes]").

[114] *See supra* notes 104–107 and accompanying text.

[115] *See* Resp. at 19–20.

allowing plaintiffs to conduct discovery.[116] Although the Fifth Circuit has recognized an exception to that rule where discovery is "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination,"[117] the Court already has the information it needs to determine that sovereign immunity applies here.[118] The Court therefore denies this request.

## IV. CONCLUSION

This is a tragic case with no winners. Nothing in the above discussion takes anything away from the challenges that Plaintiff has no doubt experienced (and perhaps continues to experience) as a consequence of Hughes's abuse. The Court recognizes the profound harm that Hughes caused and expresses its hope that Plaintiff finds healing and support going forward.

For the reasons stated above, however, the Court **ACCEPTS** Magistrate Judge Enriquez's Report and Recommendation (ECF No. 23) to the extent Judge Enriquez recommends that the Court determine that:

(1) the FTCA's discretionary function exception bars Plaintiff's claims based on the Government's:

  (a) failure to investigate or prosecute Hughes;[119] and

  (b) decision to approve Hughes's application for on-base housing;[120] and

---

[116] *Preble-Rish Haiti, S.A. v. BB Energy USA, LLC*, No. 21-20534, 2021 WL 5143757, at *2 (5th Cir. Nov. 4, 2021) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000)); *see also Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) (explaining that district courts may not defer ruling on a ***qualified*** immunity defense).

[117] *Kelly*, 213 F.3d at 849.

[118] *See supra* Section III.B.

[119] *See* R. & R. at 16–18.

[120] *See id.* at 18–19.

(2) the FTCA's misrepresentation exception bars Plaintiff's claim based on the Government's alleged failure to disclose the sexual assault allegations against Hughes.[121]

The Court thereby:

(1) **GRANTS** Defendant's Motion to Dismiss (ECF No. 11);

(2) **DENIES** Plaintiff's request for leave to conduct limited discovery and amend the Complaint;[122] and

(3) **DISMISSES** the Complaint (ECF No. 1) for lack of subject matter jurisdiction.

The Court will issue a separate final judgment dismissing all claims without prejudice.[123]

**So ORDERED and SIGNED this 30th day of September 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[121] *See id.* at 10–12.

Because the Court has determined that each of Plaintiff's claims are barred by exceptions to the FTCA's waiver of sovereign immunity, the Court need not consider whether (1) there is a private person analogue for Plaintiff's claims, *see* Pl.'s Objs. at 2–7, 9; (2) the discretionary function exception bars Plaintiff's failure to disclose claim, *see id.* at 7; or (3) the intentional torts exception bars claims arising out of assault, *see* Def.'s Objs. at 3–7. *See Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) ("If an exception applies, a plaintiff's FTCA claim is barred, and a federal court is without subject matter jurisdiction over the claim."); *see also Soppe v. United States*, No. 5:20-CV-1161-DAE, 2021 WL 3832835, at *5 (W.D. Tex. Mar. 25, 2021) (declining to address "other [subject matter jurisdiction-related] arguments in favor of dismissal" where the court already determined that it lacked subject matter jurisdiction).

[122] *See* Resp. at 20.

[123] *See Quiroz v. Hernandez*, 167 F.4th 254, 268 (5th Cir. 2025) (explaining that "claims barred by sovereign immunity should be dismissed without prejudice").